## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAVERNE DIXON,<br>PO Box 125,<br>Riderwood, Maryland 21139 | :<br>:<br>:<br>:<br>:    JURY TRIAL DEMANDED<br>: |
| Plaintiff, | : |
| | : |
| v. | : |
| | :    CASE NO. |
| PENNSYLVANIA DEPARTMENT<br>OF EDUCATION,<br>333 Market Street, 11th Floor<br>Harrisburg, Pennsylvania 17126 | :<br>:<br>:<br>: |
| | : |
| Defendant. | : |
| | : |

## COMPLAINT

Plaintiff, LaVerne Dixon, by and through her undersigned counsel, files this Complaint alleging that her rights, pursuant to Title VII of the Civil Rights Act of 1964, as amended (hereinafter, "Title VII"), Section 1981 of the Civil Rights Act, as amended, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955 et seq., have been violated and avers as follows:

## I.     PARTIES

### A.     THE PLAINTIFF

1.     Plaintiff, LaVerne Dixon (hereinafter ("Plaintiff") or ("Dr. Dixon") or ("Dixon")), is an adult individual residing in Riderwood, Maryland with a mailing address of PO Box 125, Riderwood, Maryland 21139.

2.      Dr. Dixon possesses a Doctor of Philosophy in Metaphysics with an emphasis on critical-thinking and analytics, as well as a Master of Public Administration with a focus on leadership, collaboration, and policy development within the field of education, as well as significant years of experience related to the field of education.

3.      Defendant, the Commonwealth of Pennsylvania, Department of Education (hereinafter ("Defendant") or ("PDE"), is a Pennsylvania Commonwealth Agency with a principal place of business at 333 Market Street, Harrisburg, Pennsylvania 17101.

4.      At all times material hereto, Defendant employed Dr. Dixon at its 333 Market Street, Harrisburg, PA location as set forth above and qualified as Dr. Dixon's employer.

5.      Defendant was Dr. Dixon's employer from February 28, 2012, until she was constructively discharged on October 26, 2021.

6.      At all times, Defendant met the definition of "employer" under Title VII and the PHRA.

7.      At all times material hereto, Defendant acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

8.    Defendant is liable for the actions of its agents, servants and employees performed within the course of their employment through the doctrine of Respondent Superior.

9.    This Complaint alleges retaliation and discrimination on the basis of Dr. Dixon's complaints of racial discrimination, in violation of Title VII of the Civil Rights Act, Section 1981 of the Civil Rights Act, and pendent state law claims arising under the provisions of the laws of the Commonwealth of Pennsylvania, to wit, the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, et seq. ("PHRA").

10.   Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

11.   This Honorable Court has jurisdiction of this matter, case and controversy pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 42 U.S.C. § 2000e-5(f).

12.   Additionally, pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction to hear all of Dr. Dixon's claims arising under Pennsylvania state law.

13.   The venue is properly laid in this district because the Defendant conducts business in this district and because a substantial part of the acts and omissions giving rise to the claims set forth herein occurred in this judicial district. 28 U.S.C. § 1391(b)(1) and (b)(2). Plaintiff was working in the Middle District of Pennsylvania at the time of the illegal conduct by the Defendant, as set forth herein.

14.     On April 12, 2021, Dr. Dixon filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was docketed as EEOC Charge No. 530-2021-02501, alleging racial discrimination and retaliation due to the actions of Defendant, and dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15.     Dr. Dixon has been advised of her individual right to bring a civil action by receiving a Notice of Rights from the EEOC, dated January 31, 2022 (attached as "Exhibit A").

16.     Dr. Dixon has exhausted the administrative remedies available to her, and all necessary and appropriate administrative prerequisites to the filing of this Complaint have occurred and been satisfied.

## II.    FACTS

17.      On or about February 28, 2012, the Defendant hired Dr. Dixon as a Career and Technical Education Advisor 1 ("CTEA1").

18.     Defendant, the Pennsylvania Department of Education, is an agency of the Commonwealth of Pennsylvania.

19.     Jean Kelleher was the supervisor of Dr. Dixon from in or about 2015 until Dr. Dixon's constructive discharge on or about October 26, 2021.

20.     Prior to Ms. Kelleher becoming the supervisor of Dr. Dixon, Dr. Dixon received "commendable" and "outstanding" performance evaluations from two of her previous supervisors, KC Simchock and Dr. Delmar Hart.

21.     From 2012 to 2019, Dr. Dixon was subjected various forms of racial discrimination, abuse, and retaliation at the hands of Jerry DiGiovanni, a contractor and Partner for DECA with Defendant.

22.     Specifically, Mr. DiGiovanni's unlawful acts consisted of the following:

    a. Mr. DiGiovanni frequently called Dr. Dixon his "slave", a "lazy Black work-horse", a "monkey brain", "hired help", and other racially offensive terms;

    b. In or about 2013, while Dr. Dixon was working at a conference, Mr. DiGiovanni called Dr. Dixon a "slave" and demanded she do as she's told. As Dr. Dixon walked away, Mr. DiGiovanni grabbed Dr. Dixon's arm so hard it left a bruise;

    c. In or about 2014, Mr. DiGiovanni trashed Dr. Dixon's workstation with nearly 100 boxes that were meant for the dumpster. Dr. Lee Burket then instructed Dr. Dixon and a Hispanic co-worker to clean up said boxes;

    d. In or about 2015, while staying at a hotel for a work conference in Orlando, Florida, Mr. DiGiovanni instructed the hotel manager to place

5

Dr. Dixon's hotel room under surveillance for the purpose of spying on her personal activities. The hotel manager informed Dr. Dixon of said instruction.

e. In or about 2016, Ms. Kelleher required Dr. Dixon to sit in Ms. Kelleher's office for one hour every Friday for a six-week period for phone meetings with Mr. DiGiovanni, during which time Mr. DiGiovanni would berate Dr. Dixon's work, dehumanize Dr. Dixon, called Dr. Dixon slave names, and belittle Dr. Dixon's character. When Dr. Dixon asked Mr. DiGiovanni to cease the abusive behavior, Ms. Kelleher instructed Dr. Dixon to "stop being argumentative and just let him rant." Dr. Dixon was forced to sit and endure the racial discrimination and harassment. Ms. Kelleher told Dr. Dixon that the hostility and aggression toward Dr. Dixon should be viewed as a personality conflict and not race discrimination.

f. In or about 2016, Mr. DiGiovanni and Ms. Kelleher reported false claims about Dr. Dixon's personal and professional character. The false claims prompted an internal investigation of Dr. Dixon's work and character, which was conducted by the Human Resources Director, the Labor Relations Manager, and the Defendant's Legal Department. Said investigation revealed Dr. Dixon was performing her job in alignment

with her job description and there were no problems with Dr. Dixon's personal and professional character.

23.    Throughout Dr. Dixon's time under Ms. Kelleher's supervision, Ms. Kelleher discriminated against Dr. Dixon in the following manner:

   a.  Ms. Kelleher told Dr. Dixon that Dr. Dixon's work is not as important as her white coworkers;

   b.  Ms. Kelleher intentionally gave Dr. Dixon misinformation, causing Dr. Dixon's work to be inaccurate. Ms. Kelleher then complained to upper management about Dr. Dixon's work, all in an attempt to make Dr. Dixon appear incompetent due to Ms. Kelleher's racial animosity toward Dr. Dixon;

   c.  Dr. Dixon's work was constantly criticized by Ms. Kelleher while Dr. Dixon's white coworkers were praised and uplifted for their work;

   d.  Ms. Kelleher frequently rolled her eyes or dismissed Dr. Dixon's input at meetings, which Ms. Kelleher did not do to Dr. Dixon's white coworkers;

   e.  Ms. Kelleher unjustly issued Dr. Dixon satisfactory or low ratings by omitting Dr. Dixon's significant accomplishments in order to prevent Dr. Dixon from obtaining a promotion. Further, Ms. Kelleher was aware that "commendable" or "favorable" ratings were essential for

consideration when applying for other jobs within the Commonwealth of Pennsylvania Government. Additionally, Ms. Kelleher failed to use the state government rubric for Dr. Dixon's assessment and rating;

    f.   Throughout 2020, Ms. Kelleher frequently stated "white people are smarter than black people."

24.    Ms. Kelleher's harassment was severe and pervasive.

25.    In or about 2016, Dr. Dixon asked Dr. Lee Burket, Director of the Bureau of Career and Technical Education ("BCTE"), for a transfer to a different supervisor due to ongoing race discrimination and harassment enacted by Ms. Kelleher. Dr. Dixon's request was denied.

26.    In or about 2018, Dr. Dixon asked for a transfer to a different supervisor due to Ms. Kelleher's ongoing race discrimination and harassment. The transfer was denied.

27.    In or about December 2018, Dr. Dixon applied for a promotion as Career and Technical Education Service Manager. Dr. Dixon received a Civil Service rating score of 100.

28.    In or about mid-January 2019, Dr. Dixon participated in the interview process for the Career and Technical Education Service Manager Position.

29.    In or about January 2019, Dr. Dixon informed a Union Representative that she could no longer tolerate harassment and/or abuse from Ms. Kelleher.

30.     On or about February 18, 2019, Dr. Dixon filed a complaint against Jerry DiGiovanni and Jean Kelleher due to their racial discrimination and harassment.

31.     In or about mid-February 2019, Dr. Dixon was informed by Dr. Lee Burket that the Career and Technical Education Service Manager position she applied to was abolished. Plaintiff believes and therefore alleges that the position was eliminated in retaliation for her complaint of racial discrimination and harassment.

32.     In or about March 2019, the Defendant's Deputy Secretary, Matthew Stem, ordered Dr. Burket and Ms. Kelleher to prevent Mr. DiGiovanni from conducting further racial discrimination, harassment, and retaliation against Dr. Dixon. However, no action was taken regarding Dr. Dixon's complaint toward Ms. Kelleher's racial discrimination and harassment.

33.     On or about July 5, 2020, Dr. Dixon filed an Agency EEO complaint for harassment and retaliation of Ms. Kelleher.

34.     On or about December 27, 2020, Dr. Dixon applied for a promotion to Career and Technical Education Advisor 2 (CTEA2).

35.     On or about January 26, 2021, Dr. Dixon was interviewed by Monique Burton, Cindy Gross, and Kevin Springman. The panel seemed to be impressed with Dr. Dixon's credentials and indicated that she would be selected for the position.

36.    In or about early February 2021, Ms. Kelleher was notified of Dr. Dixon's application to CTEA2. Shortly thereafter, Ms. Kelleher delivered a "satisfactory" employee performance rating in order to block Dr. Dixon's promotion.

37.    On or about February 16, 2021, Dr. Dixon filed another Agency EEO complaint for harassment, retaliation, and hostile work environment by Ms. Kelleher. On or about the same date, Dr. Dixon asked Dr. Burket for a transfer to escape Ms. Kelleher's harassment and abuse.

38.    On or about February 19, 2021, Dr. Dixon was advised by Human Resources that she was no longer being considered for the promotion and that they "have decided to utilize another recruitment method for the position." Dr. Dixon believes and therefore alleges the rejection her candidacy was a retaliatory act for Dr. Dixon's complaint of Ms. Kelleher's racial discrimination.

39.    On or about February 23, 2021, Dr. Dixon filed an internal complaint with the Bureau of Equal Employment Opportunity, a division within the Commonwealth of Pennsylvania, against Ms. Kelleher alleging race discrimination.

40.    On or about February 24, 2021, Dr. Dixon sent an email to her union president, Tina Weaver, requesting information for transfer options. Ms. Weaver informed Dr. Dixon that Julie Patton, the Defendant's Compliance Director, could assist with the transfer request.

41.     On or about March 5, 2021, Dr. Dixon submitted a memorandum of complaint to Dr. Burket regarding Ms. Kelleher's ongoing racial discrimination of Dr. Dixon.

42.     On or about March 23, 2021, Dr. Dixon told Dr. Burket she intended to be transferred.

43.     On or about March 26, 2021, Dr. Burket told Dr. Dixon that she did not want Dr. Dixon to be transferred.

44.     On or about March 30, 2021, Dr. Dixon asked Julie Patton, Compliance Officer, for a transfer due to the continued harassment and discrimination from Ms. Kelleher. The transfer was denied.

45.     Throughout Dr. Dixon's course of employment with Defendant, she was never permitted to advance beyond her entry-level position of CTEA1.

46.     Dr. Dixon was blocked from promotion despite receiving high scores for interviews in retaliation for filing complaints of racial discrimination.

47.     Less qualified white applicants were selected over Dr. Dixon for higher positions she applied for. Plaintiff believes and therefore alleges this was due to racial discrimination and retaliation.

48.     Other positions Dr. Dixon applied for were abolished to prevent Dr. Dixon's advancement and/or promotion due to racial discrimination and retaliation.

49.     Dr. Dixon continually conducted work more highly rated than her position would warrant. However, due to the racial discrimination Dr. Dixon suffered, she was not permitted to earn a salary equal to her Caucasian counterparts who were conducting the same or similar work.

## III.     CAUSES OF ACTION

COUNT I
TITLE VII – DISCRIMINATION
42 U.S.C. § 2000e-2(a)

50.     Dr. Dixon incorporates all the preceding paragraphs as if they were set forth at length herein.

51.     Defendant took adverse action against Dr. Dixon by racially discriminating against Dr. Dixon.

52.     Dr. Dixon's status as being African American places her in a protected class.

53.     Dr. Dixon's membership in a protected class was a motivating factor in Defendant's decision to not promote Dr. Dixon and/or deny her transfer requests.

54.     Dr. Dixon suffered disparate treatment by Defendant, as set forth above.

55.     As such, Defendant's decision to racially discriminate against Dr. Dixon is an unlawful employment practice under 42 U.S.C. § 2000e-2(a).

56.     As a proximate result of Defendant's conduct, Dr. Dixon sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages, work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

57.     As a result of the conduct of Defendant's management, Dr. Dixon demands punitive damages.

58.     Further, Dr. Dixon demands attorney's fees and court costs under Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), et seq.

COUNT II<br>TITLE VII – HARASSMENT<br>42 U.S.C. § 2000e-2(a)

59.     Dr. Dixon incorporates all of the preceding paragraphs as if they were set forth at length herein.

60.     Dr. Dixon had to endure pervasive and regular harassment from her supervisors.

61.     This harassment by Dr. Dixon's supervisors detrimentally affected Dr. Dixon.

62.     This harassment was motivated by Plaintiff's race.

63. The harassment by Dr. Dixon's supervisors would detrimentally affect a reasonable person for all of the reasons stated herein, as the harassment and its results would cause decreased wages, pain, lost wages, embarrassment, and humiliation to a reasonable person.

64. The harassment of Dr. Dixon by Defendant's employees was willful and intentional.

65. Despite Dr. Dixon's complaints, no meaningful remedial action was taken with respect to the harassment.

66. This willful, intentional, and unlawful harassment and discrimination violates the laws and regulations of the United States, including without limitation, 42 U.S.C. § 2000e, et seq.

67. As a proximate result of Defendant's conduct, Dr. Dixon sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages, work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

68. As a result of the conduct of Defendant's management, Dr. Dixon demands punitive damages.

69.     Further, Dr. Dixon demands attorney's fees and court costs under Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), et seq.

COUNT III
TITLE VII – RETALIATION
42 U.S.C. § 2000e-3(a)

70.     Dr. Dixon incorporates all of the preceding paragraphs as if they were set forth at length herein.

71.     As set forth above, Dr. Dixon made numerous complaints to Defendant regarding the racial discrimination she was experiencing, and as such Dr. Dixon was engaged in protected activity under Title VII of the Civil Rights Act.

72.     Defendant took adverse action against Dr. Dixon, as set forth above.

73.     As set forth above, Dr. Dixon's participation in protected activity was a motivating factor in Defendant's decision to not promote Dr. Dixon and/or deny Dr. Dixon's transfer requests.

74.     As such, Defendant's decision to not promote Dr. Dixon and/or deny Dr. Dixon's transfer requests were retaliatory actions prohibited by the Civil Rights Act of 1964, § 704(a).

75.     As a proximate result of Defendant's conduct, Dr. Dixon sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back

15

pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages, work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

76.     As a result of the conduct of Defendant, Dr. Dixon hereby demands punitive damages.

77.     Pursuant to the Civil Rights Act of 1964, § 704(a), 42 U.S.C. § 2000e-3(a), et seq., Dr. Dixon demands attorney's fees and court costs.

## COUNT IV
### DISCRIMINATION, HARASSMENT, AND RETAILATION
42 U.S.C. § 1981

78.     Dr. Dixon incorporates all of the preceding paragraphs as if they were fully set forth at length herein.

79.     Defendant took adverse action against Dr. Dixon through its harassment and racial discrimination of Dr. Dixon.

80.     Dr. Dixon is an African American and is therefore a member of a protected class.

81.     Dr. Dixon's membership in a protected class and engagement in protected activity were motivating factors in Defendant's decision to harass and discriminate against Dr. Dixon.

82.    Dr. Dixon suffered disparate treatment by Defendant, as set forth above.

83.    As set forth above, Dr. Dixon made complaints about discrimination in the workplace and as such, Dr. Dixon was engaged in protected activity under Section 1981 of the Civil Rights Act.

84.    Defendant took adverse action against Dr. Dixon, as set forth above.

85.    As set forth above, Dr. Dixon's participation in protected activity was a motivating factor in Defendant's decision to deny Dr. Dixon a promotion and/or deny Dr. Dixon's transfer request.

86.    As such, Defendant's decision to harass and discriminate against Dr. Dixon is an unlawful employment practice, under 42 U.S.C. § 1981.

87.    As a proximate result of Defendant's conduct, Dr. Dixon sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, emotional distress, mental anguish, humiliation, pain and suffering, consequential damages, work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

## COUNT V
## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT – DISCRIMINATION, HARASSMENT, AND RETALIATION
### 43 P.S. § 951, et seq.

17

88.     Dr. Dixon incorporates all of the preceding paragraphs as if they were fully set forth at length herein.

89.     At all times material hereto, and pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq., an employer may not discriminate against any employer based on race.

90.     Defendant is a qualified employer and person within the definition of Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

91.     Based on the foregoing, Dr. Dixon alleges that Defendant violated the PHRA by subjecting her to discrimination and harassment on the basis of her race.

92.     Dr. Dixon further alleges that Defendant violated the PHRA by retaliating against her for making complaints about unlawful discrimination and harassment.

93.     As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, emotional distress, mental anguish, humiliation, pain and suffering, consequential damages, work loss, loss of opportunity, and a permanent diminution of her earning power and capacity and a claim is made therefore.

94.     Pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq., Plaintiff demands attorney's fees and court costs.

## IV.     **RELIEF REQUESTED**

WHEREFORE, Plaintiff, LaVerne Dixon, demands judgment in her favor and against the Defendant in an amount in excess of $150,000.00 together with:

A.     Compensatory damages, including but not limited to: back pay, front pay, past lost wages, future lost wages, lost pay increases, lost pay incentives, lost opportunity, lost benefits, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering;

B.     Punitive damages;

C.     Attorney's fees and costs of suit;

D.     Interest, delay damages; and,

E.     Any other further relief this Honorable Court deems just, proper, and equitable.

Date: April 28, 2022          **LAW OFFICES OF ERIC A. SHORE, P.C.**

BY: */s/ Paul Carrion*
**PAUL CARRION, ESQUIRE**
**(Pa Id. No.: 328800)**
Two Penn Center, Suite 1240
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
Tel.: (215) 944-6121
Fax: (215) 944-6124

Email: paulc@ericshore.com
*Attorneys for Plaintiff, LaVerne Dixon*